USDC SCAN INDEX SHEET

















SWD   8/4/05   13:48

3:05-CV-01551   CEDERBLOM V. USA

*1*

*CMP.*



1  James F. Pokorny
   110 West C Street, #1504
2  San Diego, CA 92101
   619-239-8142
3  Fax: 619-239-8141
   email: jpokorny@pacbell.net
4  CSB No. 75407

5  Timothy E. Miller
   Miller & Associates
6  5005 SW Meadows Rd, Suite 405
   Lake Oswego, OR 97035
7  503-598-1966
   Fax: 503-598-9593
8  email: temnet@aol.com
   OSB No. 82091

9

10                    UNITED STATES DISTRICT COURT

11                 SOUTHERN DISTRICT OF CALIFORNIA

12  BRADFORD A. CEDERBLOM, LINDA S.    )    Case No. '05 CV 1551 J (BLM)
    CEDERBLOM,                          )
13                                      )    COMPLAINT FOR WRONGFUL DEATH
                        Plaintiffs,     )    (Advisory Jury Requested)
14                                      )
             v.                         )
15                                      )
    UNITED STATES OF AMERICA,           )
16                                      )
                        Defendant       )
17  _____)

18

19       Plaintiffs Bradford A. Cederblom and Linda S. Cederblom allege as follows:

20       JURISDICTION AND VENUE

21       1. Plaintiffs bring this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et

22  seq.  This court has exclusive jurisdiction pursuant to 28 U.S.C. § 1346(b).

23       2. The United States of America is the defendant in this action.  Plaintiffs are citizens of

24  the United States.  Plaintiffs are residents of the State of Idaho, County of Kootenai.

25       3. Venue is proper pursuant to 28 U.S.C. § 1402(b).  The aircraft accident described

26  herein occurred in San Diego County, California, within the Southern District of California.

Page 1 -    COMPLAINT FOR WRONGFUL DEATH

1    GENERAL ALLEGATIONS

2        4. Plaintiffs are the surviving parents of Bradford A. Cederblom, Jr.

3        5. Bradford A. Cederblom, Jr. died intestate, without spouse or issue, therefore plaintiffs

4    are the persons who would be entitled to the property of the decedent by intestate succession and

5    thus have standing to bring this cause of action under Cal. Civ. Proc. § 377.60.

6        6. Decedent Bradford A. Cederblom, Jr. died on May 10, 2004 as hereinafter more

7    specifically alleged.

8        7. On January 4, 2005, plaintiffs filed a claim for administrative relief (hereinafter

9    "Claim") with the Federal Aviation Administration (hereinafter "FAA"), pursuant to 28 U.S.C.

10   § 2675(a). The Claim was received by the FAA on or about January 13, 2005. The claim is

11   attached as Exhibit "A" and incorporated in full by this reference.

12       8. On July 13, 2005, the six month time period for the FAA to approve or deny plaintiffs'

13   claim pursuant to 28 U.S.C. § 2675(a) lapsed without a final disposition from the FAA.

14       9. Plaintiffs deem the FAA's failure to render a final disposition of the claim within six

15   months of filing a denial of the claim pursuant to 28 U.S.C. § 2675(a).

16   ***FIRST CLAIM FOR RELIEF***

17   GOVERNMENTAL NEGLIGENCE

18       10. At all relevant times, defendant United States of America acted by and through its

19   agents and employees, FAA personnel at Southern California Approach Control and Los Angeles

20   Air Route Traffic Control Center, and at other places presently unknown. Defendant, through its

21   agents and employees, was in control of and operated the approach control and air route traffic

22   control facilities that had the duty and responsibility of advising, controlling and directing the

23   flight of Piper Seminole, registration number N304PA, (hereinafter "N304PA") in which the

24   decedent was an occupant.

25       11. At all times mentioned herein, the agents and employees of defendant United States

26   of America were acting within the scope and course of their employment.

Page 2 -    COMPLAINT FOR WRONGFUL DEATH

1      12. On May 10, 2004, decedent Bradford A. Cederblom, Jr. was an occupant of N304PA

2      en route from Phoenix Deer Valley Airport, Phoenix, Arizona, to McClellan-Palomar Airport,

3      Carlsbad, California, on an Instrument Flight Rules flight plan.

4      13. FAA employees issued an instruction to "4PA" to descend and maintain 5200 feet.

5      N304PA accepted, confirmed, and followed the instruction.  The instruction was actually

6      intended for N434PA, another Piper Seminole ahead of N304PA on an identical Instrument

7      Flight Rules flight plan.

8      14. FAA employees, through negligence, wrongful acts, and omissions, failed to correct

9      the instruction given and failed to warn of an imminent impact with terrain prior to the crash.

10     FAA employees negligently provided air traffic control services as follows:

11     a. Failed to use full aircraft call signs when aircraft with similar call signs were on the

12     same frequency, thus violating FAA Order 7110.65;

13     b. Failed to recognize that the call sign of N304PA did not match the call sign of the

14     aircraft intended to receive an ATC provided instruction, thus violating  FAA Order 7110.65;

15     c. Failed to issue minimum safe altitude warnings to N304PA despite the visual and aural

16     alerts presented to controllers at Southern California Approach Control, thus violating FAA

17     Order 7110.65;

18     d.  Failed to issue minimum safe altitude warnings to N304PA despite the visual and

19     aural alerts presented to controllers at Los Angeles Air Route Traffic Control, thus violating FAA

20     Order 7110.65;

21     e. Intentionally dropped the representation of N304PA from the controller's display after

22     becoming aware that a minimum safe altitude warning alert  was active, without notifying the

23     controlling facility, Southern California Approach Control, thus violating FAA Order 7110.65;

24     f. Failed to recognize that N304PA was below the minimum vectoring altitude for the

25     sector, thus violating FAA Order 7110.65;

26     g. Failed to warn N304PA that it was below the minimum vectoring altitude for the

Page 3 -      COMPLAINT FOR WRONGFUL DEATH

1   sector, thus violating FAA Order 7110.65;

2   　　h. Failure by Los Angeles Air Route Traffic Control to alert the controlling facility,

3   *Southern California Approach Control, upon receipt of a minimum safe altitude warning alert,*

4   thus violating FAA Order 7110.65;

5   　　I. Failed to properly acknowledge a query by another aircraft regarding which aircraft had

6   been instructed to "descend and maintain 5200";

7   　　j. Caused N304PA to crash into Volcan Mountain at a high rate of speed;

8   　　k. Failed to maintain separation between N304PA and terrain;

9   　　l. Other acts and omissions yet to be determined.

10   　　15. As a direct and proximate result of defendant's negligence, wrongful acts and

11   omissions, the aircraft crashed into Volcan Mountain near Julian, California, in San Diego

12   County, killing all on board, including Bradford A. Cederblom, Jr.

13   　　***SECOND CLAIM FOR RELIEF***

14   　　NEGLIGENCE PER SE

15   　　16. All paragraphs above are incorporated as if fully set forth herein.

16   　　17. Defendant violated statutes, regulations, orders and rules in a manner which directly

17   and proximately resulted in the death of Bradford A. Cederblom, Jr. and damage to plaintiffs.

18   　　PRAYER FOR DAMAGES

19   　　Wherefore, plaintiffs pray for judgment as follows:

20   　　18. For general damages, up to $25,000,000;

21   　　19. For special damages, including but not limited to $9,260.15 for funeral and burial

22   expenses;

23   　　20. For costs of suit;

24   　　21. For attorneys fees as may be allowed by law;

25   　　22. For prejudgment interest as may be allowed by law; and

26   　　23. For such other and further relief as the court may deem proper.

Page 4 -　　COMPLAINT FOR WRONGFUL DEATH

1    REQUEST FOR ADVISORY JURY

2        24. Plaintiffs hereby request an advisory jury as provided by Rule 39©) of the Federal

3  Rules of Civil Procedure.

4        DATED this __*3*__ day of August, 2005.

5

6

7                  By _____
                      James Pokorny, CSB No. 75407

8                      Timothy E. Miller
                      Miller & Associates

9                      OSB No. 82091

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 5 -     COMPLAINT FOR WRONGFUL DEATH

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)* |
|---|---|
| Assistant Chief Counsel, Litigation Division, AGC-400<br>Federal Aviation Administration<br>800 Independence Ave., SW<br>Washington, DC 20591 | Bradford A. Cederblom and Linda Cederblom, Claimants<br>Bradford "Ford" Aston Cederblom Jr., Decedent<br>C/O Miller & Associates, 5005 SW Meadows Rd., Suite 405<br>Lake Oswego, OR 97035 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. or P.M.)* |
|---|---|---|---|---|
| ☐ MILITARY  ☐ CIVILIAN | Nov. 17, 1983 | single | Monday, May 10, 2004 | 8:51PDT |

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

Negligence, wrongful acts, and omissions on behalf of the United States and its employees, in the provision of Air Traffic Control services on May 10, 2004, within the Service regions of Southern California Approach Control and Los Angeles Air Route Traffic Control Center, which were the proximate and legal cause of the wrongful death of claimants' decedent, who was an occupant of Seminole N304PA on May 10, 2004.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Bradford "Ford" Aston Cederblom Jr. was fatally injured.
See NTSB Accident Number LAX04FA205 factual report for additional information, attachment A.
Original Death Certificate for Bradford "Ford" Aston Cederblom Jr., attachment B.
Statement of Funeral Goods and Services from Yates Funeral Homes, attachment C.

| 11. | | WITNESSES | |
|---|---|---|---|
| **NAME** | | **ADDRESS** *(Number, street, city, State, and Zip Code)* | |
| (1) FAA Employees in multiple facilities including but not limited to Southern California TRACON and Los Angeles ARTC Center.<br>(2) Eight Pan Am International Flight Academy students who participated in other aircraft. | | (2) Pan Am International Flight Academy Students<br>C/O Garry Montanari<br>Michaelis, Montanari & Johnson<br>4333 Park Terrace Dr, Suite 110<br>Westlake Village, CA 91361 | |

| 12. *(See instructions on reverse)* | | AMOUNT OF CLAIM *(In dollars)* | |
|---|---|---|---|
| **12a. PROPERTY DAMAGE** | **12b. PERSONAL INJURY** | **12c. WRONGFUL DEATH** | **12d. TOTAL** *(Failure to specify may cause forfeiture of your rights.)* |
| 0.00 | 0.00 | 25,009,260.15 | 25,009,260.15 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Timothy E. Miller, Att'y for Bradford & Linda Cederblom | 503-598-1966 | 1/04/05 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim

## INSTRUCTIONS
### Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC  20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC  20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? | ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | ☐ No |
|---|---|---|

N/A

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|

N/A

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim?  *(It is necessary that you ascertain these facts)*

N/A

| 19. Do you carry public liability and property damage insurance? | ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* | ☐ No |
|---|---|---|

N/A

SF 95 (Rev. 7-85) BACK

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 | Aircraft Registration Number: N304PA |
|---|---|---|
| **FACTUAL REPORT AVIATION** | Occurrence Date: 05/10/2004 | Most Critical Injury: Fatal |
| | Occurrence Type: Accident | Investigated By: NTSB |

## Location/Time

| Nearest City/Place | State | Zip Code | Local Time | Time Zone | |
|---|---|---|---|---|---|
| Julian | CA | 92036 | 2100 | PDT | |

| Airport Proximity: Off Airport/Airstrip | Distance From Landing Facility: 35 | Direction From Airport: 80 |
|---|---|---|

## Aircraft Information Summary

| Aircraft Manufacturer | Model/Series | Type of Aircraft |
|---|---|---|
| Piper | PA-44-180 | Airplane |

| Sightseeing Flight: No | Air Medical Transport Flight: No |
|---|---|

## Narrative

Brief narrative statement of facts, conditions and circumstances pertinent to the accident/incident:

1.1    HISTORY OF FLIGHT

On May 10, 2004, about 2051, Pacific daylight time, a Piper PA-44-180, N304PA, collided with mountainous terrain at Julian, California. The airplane was operated by Pan Am International Flight Academy under the provisions of 14 CFR Part 91. Both private pilots were fatally injured and the airplane was destroyed. Visual meteorological conditions prevailed and an instrument flight plan had been filed. The flight originated at Deer Valley, Arizona.

The airplane was on an IFR flight from Phoenix Deer Valley Airport, Phoenix, Arizona, to McClellan-Palomar Airport, Carlsbad, California. The airplane took off from Deer Valley at 1932 Pdt and the cleared route of flight was; Gila Bend, V66, Imperial, V458, Julian, then direct to Palomar. N304PA was number four in a train of five company airplanes flying the same route. The time separation between each airplane was about 5 to 10 minutes. The airplane directly ahead of N304PA was N434PA.

Review of Air Traffic Control communications and radar data shows that the flight crew of N304PA contacted the San Diego North Radar (SDNR) controller at 2043:48 Pdt, reporting level at 8,000. The SDNR controller instructed the pilot to fly heading 260 after Julian and intercept the (Palomar) localizer. The pilot read back the clearance. At 2045:47, the SDNR controller told the pilot of N434PA, another Piper Seminole ahead of N304PA and flying the same route, to descend to 6,000 feet. The pilot of N434PA acknowledged the clearance. At 2047:55, the SDNR controller transmitted, "Seminole four papa alpha descend and maintain five thousand two hundred." The pilot of N304PA responded, "Down to five thousand two hundred for three zero four papa alpha." According to information provided by the approach controller, this clearance was intended for N434PA. The controller did not recognize that the clearance had been acknowledged by N304PA rather than N434PA. At 2048:19, the pilot of N434PA transmitted, "for four three four papa alpha?" (The beginning of the transmission was blocked by another transmission from the SDNR controller to an uninvolved aircraft.) The SDNR controller replied, "No. Duke six romeo tango heading one nine zero maintain eight thousand."

At 2049:55, the pilot of N304PA reported that he had ATIS information Zulu at Palomar, and the SDNR controller responded, "Seminole three zero four papa alpha thank you very much." According to radar data, at that time N304PA was descending through about 6,600 feet. At 2050:27, the SDNR controller again cleared N434PA to descend and maintain 5,200 feet. The pilot read back the clearance, and the SDNR controller then transmitted, "Seminole four three four papa alpha is five miles from escon. Cross escon three thousand five hundred or above cleared ILS 24 at Palomar." The pilot of N434PA acknowledged.

At 2052, the controller-in-charge (CIC) of the area including the SDNR sector received a call from San Diego automated flight service station (AFSS) reporting that they were receiving a strong

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 |
| FACTUAL REPORT | Occurrence Date: 05/10/2004 |
| AVIATION | Occurrence Type: Accident |

| Narrative | (Continued) |

emergency locater transmitter (ELT) signal in the area of the Julian VOR. The AFSS specialist asked the CIC to have controllers check with aircraft in the area in order to begin localizing the source. The CIC contacted the controllers at both the San Diego West and North sectors to attempt to locate the ELT signal. At 2053:23, the SDNR controller transmitted, "Seminole four papa alpha can you uh come up on one two one point five and check for an ELT please?" There was no response. The SDNR controller then made two more attempts to contact N304PA without success. He then transmitted, "Seminole four three four papa alpha how do you hear?" The pilot of N434PA replied, "four three four papa alpha five by five." The SDNR controller then instructed the pilot of N434PA to contact Palomar tower, and the pilot acknowledged.

Between 2054:21 and 2055:36, the SDNR controller made five more unsuccessful attempts to contact N304PA. At 2058:34, the pilot of N62P asked, "SoCal six zulu papa just for my own heart did you get a hold of that Seminole?" The SDNR controller responded, "No uh we're checking right now uh I don't uh we don't know where it is right now uh last we saw of him he was just five southeast of Julian same route that you were four papa alpha."

There was no further contact with N304PA.

1.5    PERSONNEL INFORMATION

1.5.1   Flightcrew

The occupants consisted of two private pilots, both with recently acquired instrument and multi-engine ratings. The intension of the flight was to build flight experience. The normal practice at the academy was for one pilot to be pilot-in-command on the outbound leg and the other pilot to be the pilot-in-command on the return leg of the trip.

A review of Federal Aviation Administration (FAA) airman records, Okalahoma City, Okalahoma, revealed the occupant-1 held a private pilot certificate issued on April 12, 2004, with ratings for single-engine land, multi-engine land, and instrument ratings for airplanes. Occupant-1 held a first-class medical certificate issued on July 10, 2003, with the restriction that he must wear corrective lenses. Occupant-2 held a private pilot certificate issued on April 30, 2004, with ratings for single-engine land, multi-engine land, and instrument ratings for airplanes. Occupant-2 held a first class medical certificate issued on November 18, 2003, with the limitation of wearing corrective lenses for distant vision.

Occupant-1's flight logbook was not recovered or examined by the Safety Board investigator. Occupant-1's accumulated flight time was calculated from flight and training records provided by Pan Am International Flight Academy, which may not be all inclusive of his flight experience. The Pan Am International Flight Academy records revealed that the pilot had approximately 174.8 total hours of flight time with 21.6 hours of that in multi-engine aircraft. He had approximately 46.8 hours of simulated instrument time in an airplane and 12.2 hours of night flying.

Examination of occupant-2's flight logbook revealed he had 239.8 hours of total flight time, 51.3 hours of multi-engine time, 50.4 hours of simulated instrument time in an airplane, and 37.2 hours of night flying.

1.5.2   ATC Controllers

The Safety Board ATC Group Chairman conducted detailed controller interviews, which are described in the ATC Group Factual Report section in the Official Docket of this accident. The San Diego North Radar Controller was certified in this position in October 1975. The San Diego Area Controller-in-Charge was certified in this position in March 1992. The San Diego North Radar Handoff Controller was certified in this position in February 1999. The San Diego Area Supervisor West Radar Controller became supervisor in 1999 and is qualified in the North, West, and South Bay

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 |
| FACTUAL REPORT | Occurrence Date: 05/10/2004 |
| AVIATION | Occurrence Type: Accident |

**Narrative**    (Continued)

sectors.   The  Los  Angeles  Sector  9  Radar  Controller  has  been  certified  in  this  position  since
January  2003.    Los  Angeles  Area  E  Controller-in-Charge  has  been  certified  in  this  position  since
April 1989.

1.6    AIRCRAFT INFORMATION

The  airplane  was  a  Piper  PA-44-180,  serial  number  4496123,  which  was  a  twin  engine,  four  seat,
equipped  aircraft.    The  airplane  was  powered  by  two  Lycoming  O-360  engines  with  Hartzell
propellers.    Examination  of  the  engine  and  airframe  maintenance  logbooks  revealed  a  total  airframe
and  engine  time  of  2,467.8  hours  when  it  underwent  its  last  maintenance  inspection  on  May  4,  2004.
The  airplanes  maintenance  was  conducted  under  the  direction  of  the  Pan  Am  International  Flight
Academy's  Progressive  Inspection  Program.  The  airplanes  flight  record  log  revealed  that  the
airplane had accumulated 17 hours of hobbs time since May 4th.

The  airplanes  flight  record  log  that  is  kept  with  the  airplane  has  entries  for  both  occupants,  with
occupant-1  listed  first  with  the  "flight  hobbs  out"  field  entered  as  3129.5,  the  "flight  hobbs  in"
field  blank,  and  the  dispatch  block  initialed.    The  last  entry,  which  was  occupant-2,  had  all
flight  time  and  dispatch  fields  blank.    The  airplane  discrepancy  sheet  in  the  airplane  flight
record  log  listed  a  discrepancy  that  was  reported  by  the  previous  flight  crew  on  5/6/04  at  a
recorded  "flight  hobbs  in"  as  3129.5.    This  discrepancy  was  described  as  the  right  main  landing
gear  light  inoperative.    Corrective  maintenance  action  was  recorded  in  the  discrepancy  log  and
flight  record  log.    No  other  maintenance  action  or  flight  crews  are  listed  between  the  last
recorded flight on 5/6/04 and the accident flight entries.

1.7    METEOROLOGICAL INFORMATION

The  closest  weather  reporting  station  to  the  accident  site  was  Ramona,  California,  which  is  located
18  miles  to  the  northwest  at  an  elevation  of  1,390  feet.    Ramona  reported  that  at  2053  Pdt  the
winds  were  out  of  the  south  at  four  knots,  visibility  was  10  statute  miles,  the  sky  was  overcast  at
2,000  feet  agl,  the  temperature  was  15C,  dew  point  10C,  and  an  altimeter  setting  of  29.87Hg.

A  remote  Automated  Weather  Station  (RAWS)  was  located  4  nautical  miles  south  of  the  accident
location.    This  stations  elevation  was  4,239  feet,  and  provided  information  about  winds  and
relative  humidity.    The  2110  Pdt  observation  indicated  winds  were  out  of  the  west-southwest  near  14
knots,  gusting  to  22  knots.    The  relative  humidity  was  100%  (temperature  and  dew  point  were  9C).

Astronomical  calculations  show  that  sunset  occurred  at  1942  Pdt.    At  2051  the  moon  was  on  a  true
bearing from the accident location of 73.9 degrees and 60.2 degrees below the horizon.

A  detailed  weather  description  can  be  found  in  the  Meteorological  Factual  Report  section  in  the
Official Docket for this accident.

1.8    AIDS TO NAVIAGTATION

1.8.1    Information Available to the flight crew

The  published  L-3  IFR  En  route  Low  Altitude  chart  used  for  instrument  navigation  depicts  airway
V458  feeding  into  the  Julian  (JLI)  VOR  on  a  295  course  (115  radial)  and  has  a  minimum  en  route
altitude (MEA) of 7,700 feet.

The  published  ILS  RWY  24  instrument  approach  to  McClellan-Palomar  (CRQ)  depicts  the  approach  feeder
radial  258  leaving  the  Julian  (JLI)  VOR  with  a  corresponding  minimum  en  route  altitude  (MEA)  of
6,800  feet  until  the  GENTA  intersection.    GENTA  intersection  is  on  the  JLI  258  radial  and  14.3  DME
(distance  measuring  equipment).    The  depicted  minimum  safe  altitude  (MSA)  for  aircraft  approaching

---

FACTUAL REPORT - AVIATION                                                    **Page 1b**

Attachment A
Page 3 of 10

This space for binding

| National Transportation Safety Board **FACTUAL REPORT AVIATION** | NTSB ID: LAX04FA205 |
| | Occurrence Date: 05/10/2004 |
| | Occurrence Type: Accident |

**Narrative**   (Continued)

the Oceanside VOR (OCN) from the east within a 25 nautical mile radius is 6,800 feet.

The published RNAV (GPS) RWY 24 approach to McClellan-Palomar (CRQ) depicts a minimum safe altitude (MSA) of 7,400 feet for all quadrants around the airport.

1.8.2   ATC and Radar Information

Until about 2043, N304PA was receiving IFR ATC service from ZLA sector 9, which controls all airspace above 7,000 feet southeast of Julian (JLI) along V458. The aircraft was therefore still in Los Angeles Center (ZLA) airspace when the descent from 8,000 feet began, although the pilot was in contact with the Southern California TRACON (SCT) San Diego North Radar (SDNR) controller. ZLA's radar data for this area is provided by an ARSR-4 radar system located on top of Mount Laguna, which is 18 miles southeast of the accident site at 6,200 feet elevation and provided excellent coverage of N304PA's flight path. According to recorded ZLA automation data, a Minimum Safe Altitude Warning (MSAW) alert on N304PA was presented to the ZLA sector 9 controller at 2049:03. The aircraft's data block remained on the ZLA sector 9 display until the radar controller forced it off at 2050:07. The Minimum Safe Altitude Warning (MSAW) alert was being presented to the controller throughout that period. The last altitude displayed to the ZLA 9 controller in a full data block was 6,800 feet, although the target would have continued to be displayed as a limited data block (with only a beacon code and altitude) for the remainder of the flight. The ZLA minimum IFR altitude for the area southeast of JLI is 8,000 feet.

The San Diego North Radar sector uses an ASR-9 radar system located at MCAS Miramar, which is about 32 miles from the accident site. According to controller statements, it is not uncommon for the system to miss targets at 8,000 feet along the route followed by N304PA. However, recorded data shows that there were no missing targets for the last 5 minutes of the flight before the aircraft descended below 6,100 feet and went out of radar coverage.

At the time of the accident, the SDNR radar controller and associate were also responsible for the Miramar and Del Mar sectors. According to controller statements this is a normal configuration for the late evening time period. The two San Diego area controllers characterized their workload as moderate.

1.8.3   Minimum Safe Altitude Warning System Operation (MSAWS)

Los Angeles Center (ZLA) and Southern Californian TRACON (SCT) both are equipped with minimum safe altitude warning software designed to alert controllers when an aircraft is in danger of colliding with terrain or defined obstructions. As noted above, the two systems are not identical in performance. The en route and terminal systems use dissimilar terrain databases and different algorithms for predicting when an aircraft may come too close to the ground or to a man-made object such as an antenna.

En route MSAW documentation is contained in FAA documents MD-316, "Adaptation," and MD-321, "Automatic Tracking." In the en route system, airspace is divided into three-dimensional polygons with a minimum alerting altitude assigned to each polygon in accordance with IFR terrain clearance requirements. In general, if an aircraft operating under instrument flight rules descends below the minimum altitude established for the polygon, a minimum safe altitude warning will be generated and the controller will be alerted. (There are special cases where alerts are intentionally suppressed, such as when an aircraft is known to be landing.) The ZLA minimum IFR altitude for the area along V458 southeast of JLI is 8,000 feet. When N304PA descended below 7,800 feet, the MSAW system activated and provided a visual alert to the sector 9 controller. The alert continued until N304PA struck the terrain, although recorded automation data shows that the controller dropped the data block from the display when the aircraft descended through 6,800 feet.

ARTS IIIE MSAW documentation is contained in FAA documents MD-643, "Site Adaptation," and MD-644,

---

FACTUAL REPORT - AVIATION

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 |
|---|---|
| FACTUAL REPORT | Occurrence Date: 05/10/2004 |
| AVIATION | Occurrence Type: Accident |

**Narrative** (Continued)

"MSAW and Altitude Tracking."   Terrain and obstacle data for ARTS IIIE is held in the form of a matrix consisting of two-nautical-mile square boxes, with a maximum terrain/obstacle elevation assigned to each box.  The MSAW software monitors tracked aircraft with valid mode C and produces alerts based on both current and predicted terrain/obstacle clearance.  If an aircraft is currently within 500 feet of the alerting altitude for the box it is in, or is predicted through extrapolation of current altitude and rate of descent to be within 300 feet of terrain or obstacles in 30 seconds, an aural and visual alert is generated to all controllers that are displaying the aircraft's full data block.  At SCT, this alert consists of a five second beeping alert tone at the affected sector as well as a flashing red "LA" above the aircraft's data block that continues until the alert terminates.  Alerts terminate when the aircraft's terrain clearance increases beyond MSAW alert parameters, no valid mode C altitude data is available from the aircraft, or when radar contact is lost.   The minimum aural alarm volume level is restricted, and cannot be silenced by using the volume control.

The SCT MSAW system generated two predicted alerts at 2050:46 and 2050:51.  According to FAA MSAW documentation, two consecutive predicted alerts will initiate an MSAW warning to the controller working the affected aircraft.  Collectively, these alerts would have caused a 5 second aural alert to the SDNR sector beginning at 2050:51, along with a flashing red "LA" in N304PA's data block from 2050:51 until about 2051:06.  The aircraft then descended below radar coverage, the track went into coast status, and the alert terminated.

More detail concerning the ATC Facility, Radar, and the MSAW system is located in the ATC Group Factual Report section in the Official Docket of this accident.

1.12  WRECKAGE AND IMPACT INFORMATION

The accident site is located about 200 yards south of the Julian VOR station, along a ridgeline on the top of Volcan Mountain, at an elevation of 5,537 feet.  The accident site coordinates were 33 degrees 08.341 minutes North latitude and 116 degrees 35.072 West longitude.  Falling away, down slope on both sides of the ridgeline, are mature cedar and oak trees, half of which were charred and blackened from the previous years brush fires.

The first identified point of impact (PIPOI) is the sheared top of a 75 foot tree about 100 feet from the wreckage, bearing 100 degrees magnetic.  The tree is located on descending terrain from the wreckage and the sheared treetop is level with the airplane wreckage.  Along the same bearing are a series of split and broken trees, disturbed tree stumps, and large branches, descending towards the final location of the wreckage.  The outboard section of the left wing was located in a tree about 15 feet to the north of the PIPOI and exhibited distinct semicircular leading edge crush indentations.

The main wreckage consisted of the right wing and engine nacelle, cockpit, empennage, tail, and left wing engine nacelle.   The cockpit was completely crushed aft, leaving no occupiable space, with the instrument panel twisted inverted and parallel with the ground.  The hobbs meter on the instrument panel read 3132.1.  The occupants were found on the ground about 6 feet forward of and in line with the cockpit wreckage.  Occupant-1 was on the left and occupant-2 was on the right as viewed from the cockpit. The right wing was attached to the fuselage and exhibited numerous areas of semicircular crush zones along the wings leading edge.  Clear bluish fluid was found in the right nacelle fuel tank.   The right engine had separated from the nacelle and rested in a heavy bush 51 feet directly inline with the nacelle. The empennage had numerous creases and dents.  The vertical stabilizer exhibited semicircular crushed areas along the leading edge.  The vertical stabilizer was detached from the empennage at the airframe mounting brackets and rested next to the empennage.   The horizontal stabilizer was folded flat over the resting the vertical stabilizer. The left inboard wing section, nacelle, and engine had separated from the wing root and laid inverted next to the cockpit.  Clear bluish liquid was found in the left nacelle fuel tank.  The left wing spar fracture face had 45 degree fracture surfaces, were light gray in color, and had

This space for binding

| National Transportation Safety Board  FACTUAL REPORT  AVIATION | NTSB ID: LAX04FA205 |
|---|---|
| | Occurrence Date: 05/10/2004 |
| | Occurrence Type: Accident |

**Narrative**   (Continued)

matted grainy surfaces.

All flight control surfaces and balance weights were present and attached to their respective lifting surfaces. All flight control cables were traced from their linkages in the cockpit to their flight control bell cranks. The left aileron cables were separated and exhibited broom-strawing of the strand bundles. The engine control cables were traced from the throttle quadrant to their respective engine components. Both propellers were found under a bush about 9 feet forward of the main wreckage. Examination of both propellers showed similar signatures; torsional shearing of the crankshaft, blade tip curling, leading edge polishing, sinusoidal curves in the blades trailing edge, and twisting towards low pitch.

The engines were examined on scene. Both engines exhibited similar characteristics. The spark plugs were light gray in color, similar gaps, round electrodes, and had no mechanical damage. The engines were rotated and thumb compression achieved on all cylinders. All valves lifted the appropriate amount and in firing order. The oil suction screens were clear of debris. Three of the four magnetos achieved sparks on all posts, the remaining magneto from the right engine was found in pieces and was not testable. The vacuum pumps were disassembled and the impellers found intact. Bluish fluid that has the consistency of aviation gasoline was found in the fuel pumps and carburetor fuel lines.

1.13    MEDICAL AND PATHOLOLOGICAL INFORMATION

The San Diego County Medical Examiner completed autopsies on both pilots. The FAA Bioaeronautical Sciences Research Laboratory, Oklahoma City, Oklahoma, performed toxicological analysis from samples obtained during the autopsies. The results of the analysis from both pilots specimens were negative for carbon monoxide, cyanide, ethanol, and listed drugs.

The medical examiners report documents the injuries to the extremities of occupant-1 to be: left distal radius fracture, right distal thumb fracture, left humerus fracture, left distal femur fracture, and right proximal tibia fracture. The documented injuries to the extremities of occupant-2 were; Bilateral sternoclavicular separation, bilateral ankle fractures, comminuted fractures of the left tibia and fibula, left calcaneus fracture, multiple right metatarsal fractures, and left wrist fracture dislocation and proximal ulna fracture.

1.18    ADDITIONAL INFORMATION

The wreckage was released by the Safety Board investigator-in-charge on May 10, 2003.

This space for binding

| National Transportation Safety Board FACTUAL REPORT AVIATION | NTSB ID: LAX04FA205 |
| | Occurrence Date: 05/10/2004 |
| | Occurrence Type: Accident |

## Landing Facility/Approach Information

| Airport Name | Airport ID: | Airport Elevation | Runway Used | Runway Length | Runway Width |
|---|---|---|---|---|---|
| McClellan-Palomar | KCRQ | 331 Ft. MSL | NA | | |

Runway Surface Type: Unknown

Runway Surface Condition: Unknown

Type Instrument Approach: NONE

VFR Approach/Landing: None

## Aircraft Information

| Aircraft Manufacturer | Model/Series | Serial Number |
|---|---|---|
| Piper | PA-44-180 | 4496123 |

Airworthiness Certificate(s): Normal

Landing Gear Type: Retractable - Tricycle

| Homebuilt Aircraft? No | Number of Seats: 4 | Certified Max Gross Wt. 3800 LBS | Number of Engines: 2 |
|---|---|---|---|

| Engine Type: Reciprocating | Engine Manufacturer: Lycoming | Model/Series: O-360-A1h6 | Rated Power: 180 HP |
|---|---|---|---|

- Aircraft Inspection Information

| Type of Last Inspection | Date of Last Inspection | Time Since Last Inspection | Airframe Total Time |
|---|---|---|---|
| Continuous Airworthiness | 05/04/2004 | 17 Hours | 2468 Hours |

- Emergency Locator Transmitter (ELT) Information

| ELT Installed? Yes | ELT Operated? Yes | ELT Aided in Locating Accident Site? Yes |
|---|---|---|

## Owner/Operator Information

| Registered Aircraft Owner | Street Address 222 N. La Salle St Fl 17 | | |
|---|---|---|---|
| Merrill Lynch Business Financail Services | City Chicago | State IL | Zip Code 60601 |

| Operator of Aircraft | Street Address 530 W Deer Valley Rd, Suite200 | | |
|---|---|---|---|
| PAN AM INTERNATIONAL FLIGHT ACADEMY | City Phoenix | State CA | Zip Code 85027 |

| Operator Does Business As: | Operator Designator Code: PN7S |
|---|---|

- Type of U.S. Certificate(s) Held: None

Air Carrier Operating Certificate(s):

| Operating Certificate: | Operator Certificate: |
|---|---|

Regulation Flight Conducted Under: Part 91: General Aviation

Type of Flight Operation Conducted: Personal

| FACTUAL REPORT - AVIATION | Page 2 |
|---|---|

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 |
| FACTUAL REPORT | Occurrence Date: 05/10/2004 |
| AVIATION | Occurrence Type: Accident |

## First Pilot Information

| Name | | City | | State | Date of Birth | Age |
| On File | | On File | | On File | On File | 20 |

| Sex: M | Seat Occupied: Unknown | Principal Profession: Student | Certificate Number: On File |

Certificate(s):     Private

Airplane Rating(s):    Multi-engine Land; Single-engine Land

Rotorcraft/Glider/LTA: None

Instrument Rating(s): Airplane

Instructor Rating(s):   None

| Type Rating/Endorsement for Accident/Incident Aircraft? Yes | Current Biennial Flight Review? 04/25/2004 |
| Medical Cert.: Class 1 | Medical Cert. Status: Valid Medical--w/ waivers/lim. | Date of Last Medical Exam: 07/01/2003 |

| - Flight Time Matrix | All A/C | This Make and Model | Airplane Single Engine | Airplane Mult-Engine | Night | Instrument | | Rotorcraft | Glider | Lighter Than Air |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Actual | Simulated | | | |
| Total Time | 175 | 22 | 153 | 22 | 11 | | 47 | | | |
| Pilot In Command(PIC) | 94 | 2 | 92 | 2 | 7 | | | | | |
| Instructor | | | | | | | | | | |
| Last 90 Days | 67 | 22 | 45 | 22 | 1 | | | | | |
| Last 30 Days | 13 | 13 | 0 | 12 | 1 | | | | | |
| Last 24 Hours | | | | | | | | | | |

| Seatbelt Used? Yes | Shoulder Harness Used? Yes | Toxicology Performed? Yes | Second Pilot? Yes |

## Flight Plan/Itinerary

Type of Flight Plan Filed: IFR

| Departure Point | | State | Airport Identifier | Departure Time | Time Zone |
| Phoenix | | AZ | KDVT | 1830 | MST |

| Destination | | State | Airport Identifier | |
| Palomar | | CA | KCRQ | |

Type of Clearance: IFR

Type of Airspace:   Class G

## Weather Information

Source of Briefing:
     Commercial Weather Service

Method of Briefing: Telephone

| FACTUAL REPORT - AVIATION | Page 3 |

This space for binding

| National Transportation Safety Board | NTSB ID: LAX04FA205 |
|---|---|
| **FACTUAL REPORT** | Occurrence Date: 05/10/2004 |
| **AVIATION** | Occurrence Type: Accident |

## Weather Information

| WOF ID | Observation Time | Time Zone | WOF Elevation | WOF Distance From Accident Site | Direction From Accident Site |
|---|---|---|---|---|---|
| KRMN | 2053 | PDT | 1390 Ft. MSL | 18 NM | 258 Deg. Mag. |

| Sky/Lowest Cloud Condition: | Ft. AGL | Condition of Light: Night/Dark |
|---|---|---|

| Lowest Ceiling: Overcast | 2000 Ft. AGL | Visibility: | 10 | SM | Altimeter: | 29.87 | "Hg |
|---|---|---|---|---|---|---|---|

| Temperature: | 15 °C | Dew Point: | 10 °C | Wind Direction: 180 | Density Altitude: | 1764 | Ft. |
|---|---|---|---|---|---|---|---|

| Wind Speed: 4 | Gusts: | Weather Condtions at Accident Site: Visual Conditions |
|---|---|---|

| Visibility (RVR): | Ft. | Visibility (RVV) | SM | Intensity of Precipitation: |
|---|---|---|---|---|

Restrictions to Visibility:  None

Type of Precipitation:     None

## Accident Information

| Aircraft Damage: | Aircraft Fire: | Aircraft Explosion |
|---|---|---|

Classification:

| - Injury Summary Matrix | Fatal | Serious | Minor | None | TOTAL |
|---|---|---|---|---|---|
| First Pilot | 1 | | | | 1 |
| Second Pilot | 1 | | | | 1 |
| Student Pilot | | | | | |
| Flight Instructor | | | | | |
| Check Pilot | | | | | |
| Flight Engineer | | | | | |
| Cabin Attendants | | | | | |
| Other Crew | | | | | |
| Passengers | | | | | |
| - TOTAL ABOARD - | 2 | | | | 2 |
| Other Ground | | | | | |
| - GRAND TOTAL - | 2 | | | | 2 |

| FACTUAL REPORT - AVIATION | Page 4 |
|---|---|

This space for bending

| National Transportation Safety Board  FACTUAL REPORT  AVIATION | NTSB ID: LAX04FA205 |
| | Occurrence Date: 05/10/2004 |
| | Occurrence Type: Accident |

**Administrative Information**

Investigator-In-Charge (IIC)

Van S. McKenny

Additional Persons Participating In This Accident/Incident Investigation:

Daron   Kong
Aviation Safety Inspector
Federal Aviation Administration
8525 Gibbs Dr, Suite 120
San Diego, CA 92123

Mark   Platt
Aviation Safety Investigator
Textron-Lycoming
657 Oliver St
Williamsport, PA 17701

Charles R Little
Aviation Safety Investigator
The New Piper Aircraft Company
2926 Piper Dr
Vero Beach, FL 32960



# CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO

3 200437 007810

| 1. NAME OF DECEDENT — FIRST (Given) | | 2. MIDDLE | 3. LAST (Family) | | |
|---|---|---|---|---|---|
| BRADFORD | | ASTON | CEDERBLOM, JR. | | |

| 4A. ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST) | | 4. DATE OF BIRTH mm/dd/yyyy | 5 AGE Yrs | UNDER 1 YEAR Months/Days | UNDER 1 HOUR Hours/Minutes | 6 SEX |
|---|---|---|---|---|---|---|
| | | 11/17/1983 | 20 | | | M |

| 9 BIRTH STATE/FOREIGN COUNTRY | 10 SOCIAL SECURITY NUMBER | 11 EVER IN U.S. ARMED FORCES? | 12 MARITAL STATUS (at Time of Death) | 7 DATE OF DEATH mm/dd/yyyy | 8 HOUR (24 Hours) |
|---|---|---|---|---|---|
| ID | 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 | YES [X] NO | NVR. MAR. | Fd 05/10/2004 | 2158 |

| 14 EDUCATION | 14.15 WAS DECEDENT SPANISH/HISPANIC/LATINO? | 16 DECEDENT'S RACE — Up to 3 races may be listed |
|---|---|---|
| SOME COLLEGE | YES [X] NO | WHITE |

| 17 USUAL OCCUPATION — Type of work for most of life. DO NOT USE IF RETIRED | 18 KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19 YEARS IN OCCUPATION |
|---|---|---|
| AVIATION STUDENT | PRIVATE COLLEGE EDUCATION | 2 |

| 20 DECEDENT'S RESIDENCE (Street and number or location) | | | | |
|---|---|---|---|---|
| 15568 NORTH WINDSONG LANE | | | | |

| 21 CITY | 22. COUNTY/PROVINCE | 23 ZIP CODE | 24 YEARS IN COUNTY | 25 STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| RATHDRUM | KOOTENAI | 83858 | – | ID |

| 26 INFORMANT'S NAME, RELATIONSHIP | 27 INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, ZIP) |
|---|---|
| BRADFORD CEDERBLOM, SR. — FATHER | 15568 N. WINDSONG LANE, RATHDRUM, ID 83858 |

| 28 NAME OF SURVIVING SPOUSE — FIRST | 29 MIDDLE | 30 LAST (Maiden Name) |
|---|---|---|
| | | |

| 31 NAME OF FATHER — FIRST | 32. MIDDLE | 33 LAST | 34 BIRTH STATE |
|---|---|---|---|
| BRADFORD | A. | CEDERBLOM | VA |

| 35 NAME OF MOTHER — FIRST | 36 MIDDLE | 37 LAST (Maiden) | 38 BIRTH STATE |
|---|---|---|---|
| LINDA | S. | BOTTUM | CA |

| 39 DISPOSITION DATE mm/dd/yyyy | 40 PLACE OF FINAL DISPOSITION | |
|---|---|---|
| 05/13/2004 | PINE GROVE CEMETERY, RATHDRUM, ID 83858 | |

| 41 TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43 LICENSE NUMBER |
|---|---|---|
| TR/BU | | 8839 |

| 44 NAME OF FUNERAL ESTABLISHMENT | 45 LICENSE NUMBER | 46 SIGNATURE OF LOCAL REGISTRAR | 47 DATE mm/dd/yyyy |
|---|---|---|---|
| BAYVIEW CREM. & BURIAL | FD-1709 | Nancy L Bowen MD | 05/03/2004 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| Fnd. Volcan Mtn Wilderness Preserve | | [X] Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number or location) | 106 CITY |
|---|---|---|
| San Diego | 1.3 mi S/E of Julian VOR Tower | Julian |

| 107. CAUSE OF DEATH | | Time Interval | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE | Blunt force head and neck injuries | Rapid | 04-00972 |
| | | | 108. BIOPSY PERFORMED? [X] NO |
| | | | 110. AUTOPSY PERFORMED? [X] NO |
| | | | 111. USED IN DETERMINING CAUSE? |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| None! |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR LAST 30 days | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| No. | YES NO UNK |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/yyyy |
|---|---|---|---|
| | | | |

| 118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 120. MANNER OF DEATH | 121. INJURED AT WORK? | 122. HOUR (24 Hours) |
|---|---|---|---|
| | Accident [X] | YES NO [X] | Fd 05/10/2004 2158 |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| Volcan Mountain Wilderness Preserve |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| Occupant in fixed wing aircraft crash |

| 125. LOCATION OF INJURY (Street and number or location, and city, and ZIP) |
|---|
| 1.3 mi S/E of Julian VOR tower, Julian, 92036 |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/yyyy | 128. TYPE NAME, TITLE OF CORONER/DEPUTY CORONER |
|---|---|---|
| Christina Stanley | 05/13/2004 | Christina Stanley, M.D. — C.D.M.E. |

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | | 2408877 | |

*A01241412*

County of San Diego - Department of Health Services - 3851 Rosecrans Street. This is to certify that, if bearing the OFFICIAL SEAL OF THE STATE OF CALIFORNIA, the OFFICIAL SEAL OF SAN DIEGO COUNTY AND THEIR DEPARTMENT OF HEALTH SERVICES EMBOSSED SEAL, this is a true copy of the ORIGINAL DOCUMENT FILED. Required fee paid.

DATE ISSUED: May 14, 2004

Nancy L Bowen MD
NANCY L. BOWEN, M.D.
REGISTRAR OF VITAL RECORDS
County of San Diego

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

Attachment B
Page 1 of 1



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

Received Fax :      Oct 25 2004 13:      Fax Station :   Miller & Associates      P. 1

FROM :                          FAX NO. :                    Oct. 25 2004 01:20PM P1

# YATES
## Funeral Homes
### and Crematory

Coeur d'Alene Chapel      664-3151      Hayden Chapel
744 N. 4th Street                      373 E. Hayden Avenue
Coeur d'Alene, ID 83814                Hayden Lake, ID 83835

DECEASED _Bradford A. Cederblom_
DATE OF STATEMENT _5-12-04_

**STATEMENT OF FUNERAL GOODS AND SERVICES SELECTED**
Charges are only for those items that you selected or that are required. If we are required by law or by a cemetery or crematory to use any items, we will explain the reasons in writing below.

## A. CHARGE FOR SERVICES SELECTED
### Package Offering ( A ):

_Full Service Funeral with Graveside_ 2,295

**1. Professional Services:**
Basic Services of Funeral Director and Staff ........... ✓
Embalming .................................................. ✓
Other Preparation of the Body ......................... ✓
Refrigeration ...............................................

**2. Staff, Facilities, Equipment:**
Chapel or Church Funeral ............................... ✓
Graveside Service ........................................ ✓
Chapel or Church Memorial ..............................
Gathering ..................................................
Limited Off Premises Memorial .........................
Visitation/Viewing ........................................ ✓

**3. Automotive Equipment:**
Transfer of remains to funeral home ................. ✓
Hearse ..................................................... ✓
Limousine .................................................
Service Vehicle ........................................... ✓
_Transportation From Airport_ 90 ............. 90

**4. Other Services and Equipment:**
Comfort Music System .................................. ✓
Crematory ..................................................
_Special Care of Autopsied_ 115 ................. 115
_remains_

TOTAL (A) SERVICES SELECTED .......... $ 2500.00

## B. TRANSFERING AND DIRECT DISPOSITION
Forwarding of remains to:

Receiving of remains from:

Immediate Burial ..........................................
Direct cremation ..........................................

TOTAL (B) .................................................. $

## C. CHARGE FOR MERCHANDISE SELECTED
Casket or container _Velvet Blue_ ........... 3450.00
  Material _18 Gauge Steel_
  Color _Blue_
Outer burial container _Liner_ ................. 460
  Material
  Delivery _160_   O.T. ...................... 160
Air Tray ....................................................
Flowers .....................................................
Register Book _Blue Diamond_ ............... 40.00
Memorial Folders ........................................
Acknowledgement Cards _1 Box_ ........... 6.00
Cremation urn ............................................
_Other_ _Combo Shipping Container_ ....... 195
TOTAL (C) MERCHANDISE SELECTED ......... 5311

FUNERAL HOME CHARGES ........................ 5811

### CASH ADVANCES
Certified Copies of Death Certificate
10 @ 13          Each $ 130
_Reception Food_ ......... 100 ... 288.78
Clergy _Rev Mark Medar_ ... 100
Musicians _COA Memorial Gardens_ ... 673.68
Florists _Pinegrove Cemetery_ ... 723.93
Obituary _COA-Press 2 days_ ... 100
_San Diego Cty Mrg Fee_ ... 752.00
_Perm Fee_ ... 20.00
_Calif_ ... _Perm Fee_ ... 16.00
_Airline Fees (Amrica West)_ ... 263.50
_COMMERCIAL PRINTING_ ... 680.25
                    TOTAL CASH ADVANCES
                    Total $ 3449.14

### SUMMARY
Total Funeral Home Charges .................. $ 5811
Total Cash Advanced ........................... $ 3449.14
Sales Tax, if applicable ....................... $

GRAND TOTAL $ 9260.14

Less Credits and Prepayments: ............ $

Plus Items Ordered Later: ..................... $

BALANCE DUE ▶ $

Billing To _Phoenix Aviation Managers Inc_
Address _P.O. Box 440757_
_1255 Roberts Blvd. Suite 200_
Phone _Kennesaw, GA 30160_
Fax _bill to 1-770-919-8646_

### DISCLOSURE
If you selected a funeral that may require embalming, such as a funeral with viewing, you may have to pay for embalming. You do not have to pay for embalming you did not approve if you selected arrangements such as a direct cremation or immediate burial. If we charge for embalming, we will explain why below:

Reason for embalming _Transportation for_
_Airline (Visitation_

Legal, cemetery, or other requirements compelling the purchase of any item listed above: _Cemetery_
_Outer burial Container + Airline Combo_

The only warranty on the caskets and/or outer burial container, if any, granted by the manufacturer. This funeral home makes no warranty, express or implied, with respect to the casket and/or outer burial container.

### ACKNOWLEDGMENT AND AGREEMENT
I hereby acknowledge that I have the legal right to arrange the final services for the deceased, and I authorize this funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement. I acknowledge that I have received, on this date, the General Price List and have been offered for inspection the Casket and the Outer Burial Container Price List. I also acknowledge execution and receipt of a copy of this Statement. **TERMS OF PAYMENT:** Cash Advanced items are due at the time of the service arrangements. The Balance Due is payable in 30 days. After 30 days a monthly late charge of 1% (ANNUAL PERCENTAGE RATE OF 12%) will be added to the unpaid portion of the Balance Due. **PAYMENT OPTIONS:**
☐ Cash or Check   ☐ Insurance Assignment
☐ Credit Card     ☒ Decedent's Estate
    I agree to pay and/or guarantee payment of the charges listed on this Statement, plus any applicable late charges. In the event of default of payment, I agree to pay reasonable attorney's fees and court costs. I agree that the liability is being personally assumed by me and is in addition to the liability imposed by law upon the estate, and this agreement does not constitute a release of liability. By my signature below, acknowledgment and agreement of the above is hereby made.

X _____   _____
                                    Dated
Social Security No. _____

X _____   _____
  Co-Signed                          Phone

**ACCEPTANCE** This funeral establishment agrees to provide all services, merchandise and cash advances indicated on this Statement.
By _____

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Cederblom, Bradford A.
Cederblom, Linda

**DEFENDANTS**

United States of America

**FILED**

AUG - 3 2005

**'05 CV 1 5 5 1 J (BLM)**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Kootenai, ID
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

"See attachment"

**ATTORNEYS (IF KNOWN)**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX**
**(For Diversity Cases Only)           FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

28 U.S.C. Sections 2671 et seq. Wrongful death due to governmental negligence

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☒ 310 Airplane | ☐ 362 Personal Injury- | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Medical Malpractice | ☐ 625 Drug Related Seizure | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - | of Property 21 USC881 | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

**DEMAND $** $25,009,260.15

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE _____  Docket Number _____

DATE 08/03/05    SIGNATURE OF ATTORNEY OF RECORD  James F Johnny

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

116056 $250.00

Civil Cover Sheet, Attachment

1(C) Attorneys:

For Plaintiffs:

James F. Pokorny
110 West C. Street #1504
San Diego, CA 92101
619-239-8142

Miller & Associates
Timothy E. Miller
5005 SW Meadows Rd
Suite 405
Lake Oswego, OR 97035
503-598-1966